JOHN L. SWISHER, APPELLEE, V. FIDELITY & CASUALTY COMPANY, APPELLANT.

FILED MAY 23, 1925.    No. 23179.

1. **Brokers:** CONSIGNMENT FOR SALE ON COMMISSION. A consignment to a commission merchant of grain to be stored, the intention being that the consignee shall sell the same when so instructed by the consignor, is a consignment for sale on commission within the protection of the commission merchant's bond required by section 7472, Comp. St. 1922.

2. ———: BOND: BREACH. Obtaining advances upon the consignment without the knowledge and consent of the consignor, within the term of the bond, constitutes a breach of the bond, although the amount of consignor's loss is not discovered nor determined until after such term.

3. ———: COSTS. A commission merchant's bond is within the operation of section 7811, Comp. St. 1922, authorizing the taxation of attorney's fees as costs in certain cases.

APPEAL from the district court for Douglas county: JOHN B. RAPER, JUDGE. *Affirmed.*

*Crossman, Munger & Barton,* for appellant.

*Hugh A. Myers, contra.*

Heard before ROSE, GOOD and THOMPSON, JJ., REDICK and SHEPHERD, District Judges.

REDICK, District Judge.

Action upon a commission merchant's bond. The facts are not disputed. One C. P. Moriarty, under name of Moriarty Grain Company, was in the business of a commission merchant selling grain upon commission on the Omaha Grain Exchange, and gave the bond in suit with defendant, the Fidelity & Casualty Company of New York, as surety. With the exception of some immaterial verbal variations, the condition of the bond was in the language of the statute requiring it, as follows:

"Now therefore if said license (commission merchants') be granted, and the said Moriarty Grain Company as such commission merchant, shall well and truly perform all

agreements entered into with the consignors with respect to the receiving, handling, selling and making payments for consignments made to them and shall faithfully comply with the laws of the state of Nebraska governing sale of merchandise upon commission then this bond to be null and void otherwise to be in full force and effect."

October 15, 1921 plaintiff wrote Moriarty: "Am shipping you for storage from Dix, Nebr., 2 80,000 cap. cars of wheat." The cars were shipped to plaintiff at Omaha, "Notify Moriarty Grain Co.," the bills of lading being indorsed and delivered to Moriarty who, October 28 and 29, received and stored the grain in his own name with Farmers Terminal Elevator Company, he having no storage facilities of his own, and sent the statements of the transaction, with the words "Stored for J. L. Swisher" indorsed thereon in the handwriting of Moriarty, to plaintiff. No warehouse receipt was issued. October 25, Moriarty procured from the elevator company an advance on the wheat of $1,000, and November 23, $500, without the knowledge or consent of plaintiff. So matters rested until March 3, 1922, when Moriarty died. Thereupon plaintiff demanded his wheat and was informed of the advances to Moriarty, for which with freight and storage the elevator company claimed a lien. April 4, 1922, by consent of the parties interested the wheat was sold and the balance of the proceeds, $803.86, paid plaintiff, who sues upon the bond to recover $1,569, and interest, being the amount of advances to Moriarty deducted from the proceeds of the sale. Defendant answered admitting the execution of the bond and denying all other allegations; defendant offered no evidence, and both parties having moved for an instructed verdict, the jury were discharged and the court found for plaintiff, and from the judgment thereon and taxation of attorney's fees defendant appeals.

Appellant urges the following points for reversal:

(1) That Moriarty did not receive the grain as a "commission merchant" for sale on commission, but merely as an agent for storage, in which capacity his fidelity was not

insured by the bond; (2) that plaintiff suffered no damage until he demanded the grain in March, 1922, and, as the period of the bond was 1921, such loss was not covered; (3) that the allowance of attorney's fees was not authorized.

Of these in their order:

Moriarty Grain Company was licensed to carry on the business of a commission merchant who is defined by the statute:

"That any person, firm or corporation pursuing or who shall pursue the business of selling farm * * * produce * * * upon consignment for a commission shall be deemed to be a commission merchant." Laws 1909, ch. 66, sec. 1.

Plaintiff testified that at the time of shipment the market was low, and that he arranged with Moriarty to store the grain until he authorized him to sell it; that he had stored and sold the grain for him before; that plaintiff thought the market would be higher in the spring, when he would sell it through Moriarty.

How shall this transaction be characterized? Was it a special agency to procure storage, or a consignment for sale on commission? From the letter, the situation and previous dealings of the parties and undisputed evidence of plaintiff, the intention is clear that the wheat should be sold when the price was satisfactory to the consignor. The controlling motive for the consignment was the sale of the grain. The custody or care of the goods pending sale was a mere incident to the main purpose. That no time was fixed for the sale is not important—neither the statute nor bond contemplate an immediate sale. Some period of time must elapse between arrival and sale, during which the consignee is in possession. The goods must be unloaded or be subject to demurrage. Without specific instructions it would be the duty of the consignee to store until he received orders to sell. If during the waiting period he converted the goods, the bond would be liable. This, in effect, is what he did *pro tanto*.

We conclude that Moriarty received the goods for sale in his capacity as a commission merchant, that he failed to

Swisher v. Fidelity & Casualty Co.

perform his agreement with consignor with respect to "the receiving, handling, selling and making payments," thereby committing a breach of the bond.

The second point is not well taken. The breach occurred at the time Moriarty procured the advances, which was within the term of the bond, and was never healed. By Moriarty's wrongful act a lien upon the goods was created, which could only be satisfied by payment. Though the loss was not discovered until later, the default was within the term of the bond.

Lastly, did the court err in assessing an attorney's fee as costs? The bond in question is within the classification of the statute, Comp. St. 1922, sec. 7814: "4. Fidelity insurance—Guaranteeing the fidelity of persons holding places of public or private trust; guaranteeing the performance of contracts other than insurance policies, or guaranteeing and executing all bonds, undertakings and contracts of suretyship." Section 7811, Comp. St. 1922, provides for taxation of attorney's fees "in all cases * * * at law upon any policy of * * * guaranty, fidelity, or other insurance." It is argued that "insurance * * * relates to obligations created by the acts of the parties," while "section 7472, Comp. St. 1922, requiring commission merchants to give bond is an obligation imposed by law." But defendant was not required by law to sign this bond. It was a voluntary act, entered upon for a consideration, and by the acts of the parties. It is further argued that the statute is complete with reference to the liability on the bond. The taxing of an attorney's fee does not increase such liability. If the surety pays its obligations without suit, such fee cannot be claimed. It is taxed as costs.

The judgment of the district court is right and is affirmed. An attorney's fee of $100 will be taxed on the appeal.

AFFIRMED.

Note—See Factors, 25 C. J. secs. 6, 7.