[No. 25474. Department One. April 12, 1935.]

JOHN ZAGAR et al., Respondents, v. COLUMBIA CASUALTY COMPANY, Appellant.[1]

Roberts & Skeel and Frank Hunter, for appellant.

Todd, Holman & Sprague, Lowell P. Mickelwait, and Charles F. Riddell, for respondents.

[1]Reported in 43 P. (2d) 949.

Beals, J.—During the year 1932 and up to approximately July 1, 1933, Fred Rea and another were co-partners engaged in the commission business in the city of Seattle. Pursuant to Rem. Rev. Stat., § 8293, the partnership filed its bond for the year 1932 in the sum of five thousand dollars, conditioned "for the benefit of all consignors having any cause of action against the commission merchant," as required by law. For the year 1933, the partnership furnished a statutory bond with defendant, Columbia Casualty Company, as surety.

John Zagar sued the defendant surety company, claiming that, during the year 1932, he consigned to the partnership (hereinafter referred to as the merchant) pears and apples, on account of which the merchant became indebted to him in the sum of $1,268.62, which the merchant failed to pay. Plaintiff A. R. Knaub sued the surety company (on her own and a small assigned claim), alleging delivery to the merchant of certain fruit, on account of the proceeds of which no payment was made, and that the merchant was indebted to plaintiff A. R. Knaub in the sum of approximately $4,750. The two cases were consolidated, and resulted in a judgment in favor of John Zagar for the sum of $1,154.42, and in favor of A. R. Knaub for the sum of $2,501.10, each plaintiff being awarded interest and an attorney's fee. From this judgment, defendant surety company has appealed.

The surety company contends that it, not having been surety on the bond filed by the merchant for the year 1932, is not liable as surety on the bond for 1933 for its principal's failure to account to the consignors for the proceeds of fruit or similar products consigned and delivered to the merchant during the year 1932. Respondents contend and the trial court held that appellant, as surety upon the 1933 bond, is, under the

record in this case, responsible for the amounts of the several judgments herein rendered, even though the property was consigned to the merchant during the year 1932. It appears that all of the farm products upon the consignment of which respondents' claims are based, were delivered to the merchant during the year 1932. Some of them were sold during that year, the remainder having been disposed of during the year 1933.

Under Rem. Rev. Stat., § 8292, and the following sections relating to commission merchants, the license therein provided for is effective only through December thirty-first next following issuance. Application for a renewal of a license must be made in the same manner as an original application, and a new bond must be tendered therewith.

The pertinent portion of Rem. Rev. Stat., § 8293, reads as follows:

"All applications for licenses hereunder shall be filed with the director of agriculture and shall be accompanied by a good and sufficient bond in the penal sum of five thousand dollars ($5,000.00) and upon a form to be approved by the attorney general, and shall be executed by the applicant as principal and by a surety company authorized to do business in the state of Washington as surety. Said bond shall be for the benefit of all consignors having any cause of action against the commission merchant, and shall be conditioned for the faithful performance by the applicant of all duties as such commission merchant."

Rem. Rev. Stat., § 8297 [P. C., § 1417-19], provides that:

"Whenever any commission merchant sells all or a portion of any agricultural products received for sale on commission, he shall within fifteen days following the sale and delivery to the purchaser of such agricultural products sold in intrastate commerce, or thirty days following the sale and delivery to the purchaser

of such agricultural products sold in interstate commerce, render a true statement to the consignor showing such sale, the price received therefor, the date of sale, and all charges and expenses paid or incurred on account of such sale; and such commission merchant shall within five days thereafter upon demand by the consignor, pay to the consignor all sums due said consignor after deducting therefrom all amounts paid for transportation, drayage, auction, brokerage, storage, taxes, insurance, duty and all other charges incurred in the handling and selling of such agricultural products consigned. . . ."

The bond upon which appellant is surety recites that it was executed "for the benefit of all consignors having any cause of action against the principal," and that

"The condition of this obligation is such that if the above bounden principal shall faithfully perform as such commission merchant all acts and duties enjoined upon it by law, then the above obligation shall be null and void; otherwise to remain in full force and effect."

Appellant argues that it is apparent that it is the intention of the statute that each annual bond filed by a commission merchant shall be answerable to consignors delivering produce to the commission merchant during the term of the bond, whether the merchandise was sold during the period the bond was effective or later, and without regard to the time when the commission merchant should have paid to the consignor money realized from the sale. Respondents contend that a surety is responsible to consignors who are entitled to receive money from the commission merchant during the effective period of its bond, whether the merchandise, the sale of which resulted in the obligation of the commission merchant, was delivered to him during the term of the bond relied upon or at some previous date and while some other bond was in effect.

It is evident that the intention of the law is that all persons delivering goods to the merchant shall be protected by a bond, but it nowhere appears that it is the intention of the statute that any money due from the merchant shall be protected by two different annual bonds. The question here to be determined is whether or not respondents' respective claims, in whole or in part, are against the 1932 bond or that filed for 1933, upon which appellant is surety.

The basis of the obligation is in each case, of course, the consignment and delivery of merchandise. Upon such delivery, however, the merchant does not become obligated to pay money to his consignor. The transaction may or may not result in such a liability on the merchant's part. The obligation to pay money (in such a case as is here presented) arises only when the goods have been sold and the consignor becomes entitled to receive some portion of the proceeds thereof. We are not here concerned with any alleged liability for damages based on neglect of the merchant to sell, damages to merchandise, or any similar claim.

When such a situation as is here presented arises, the consignor is entitled to be paid by the merchant, and if payment is not made, the merchant then becomes guilty of dereliction of duty, and a claim arises in favor of the consignor, both against the merchant and against the surety upon his statutory bond.

It is, of course, true that, the bond here in question being a statutory bond, the provisions of the act pursuant to which the same was given are read into the bond and considered as a part thereof. Rem. Rev. Stat., § 777 [P. C. § 7431]; 9 C. J. 34, § 56.

Respondents rely upon the recognized principle that a bond executed by a compensated surety is construed most strongly against the surety and in favor of the beneficiary. That rule of law has no application to the

case at bar, as the question here is not whether any surety is liable, but rather which of two sureties is liable. Neither is there any question concerning the language of the bond. It cannot be said that the beneficiary of such a bond as is now before us shall enjoy the benefit of a liberal construction of his claim so as to bring the same within the purview of one bond rather than another.

Under § 8293, above referred to, the bond of a commission merchant is "for the benefit of all consignors having any cause of action against the commission merchant, and shall be conditioned for the faithful performance" by the commission merchant of all his duties as such. A cause of action in favor of the consignor (in cases of sales of merchandise) arises when the merchant has money which the consignor is entitled to receive. The questions here presented concern only claims on a bond on account of sales actually made and money received by the merchant which it is admitted belongs to the consignors. Section 8297, *supra,* makes it the duty of the merchant to render a true statement of account to the consignor within certain periods following a sale, and directs that "within five days thereafter, on demand of the consignor," the money due shall be paid.

Manifestly, in this action, it is necessary to determine, as between the consignor and the surety, the precise time the latter's obligation to the former arises. Curiously enough, there seems to be a dearth of authority upon this question, as applicable to just such a question as is here presented, and we find it necessary to decide the issues here presented largely as an original proposition.

It is a well recognized principle of law that a principal having several successive bonds covering different periods, upon committing a default, renders liable

that bond in force when the default is committed. 50 C. J. 88, § 142; 22 R. C. L. 513, § 199. The obligation to pay arises when the principal commits a breach of duty. In cases of defaults by an official, the bond covering the period during which the default occurred is liable. *King County v. Ferry,* 5 Wash. 536, 32 Pac. 538, 34 Am. St. 880, 19 L. R. A. 500; *Wenatchee Orchard Syndicate v. Fidelity & Deposit Co. of Maryland,* 143 Wash. 632, 255 Pac. 943; *Sakris v. Eagle Indemnity Co.,* 176 Wash. 73, 28 P. (2d) 316; 2 Brandt on Suretyship (3d ed.) 1187, § 652; 46 C. J. 1073, § 409.

Section 8297, *supra,* requires the commission merchant to account to his consignor within fifteen (or thirty) days after he sells all or a portion of the consigned property, and also makes it his duty, "within five days thereafter, upon demand of the consignor," to pay to the consignor the net sum due to him.

In the case at bar, it was agreed that, at the time the merchant closed his business, in 1933, he was indebted to respondent Knaub in the sum of $3,668.65, and that of this amount the net proceeds of sales during the year 1932 amounted to $2,381.04, the balance having been sold during the winter and spring of 1933. The merchant's bookkeeper, in answer to a leading question as to whether or not it was possible to account to the consignor until the entire lot was sold, answered: "No, it was not;" whereupon appellant's counsel remarked: "That is all conceded." Later, appellant's counsel objected to the admission of an exhibit which tended to show the dates of the sales of some of the merchandise. The objection was overruled and the exhibit admitted in evidence. Other evidence was received which clearly indicates that a considerable portion of the products consigned by respondents was sold during the year 1932.

It is evident that appellant tried the case in the court below primarily upon the theory that it was not liable to either of respondents, because none of respondents' merchandise was consigned to the merchant during the term of appellant's bond. Upon the record before us, however, we do not think that appellant is now precluded from arguing that it is, at least, not liable for certain of the products received and sold during the year 1932. Evidence is in the record which we believe entitles appellant to a reversal of the judgment appealed from, and it would be highly technical to hold that this evidence cannot be considered by this court and the correct rule laid down concerning appellant's liability.

While it is undoubtedly true that it may well be convenient for the merchant to delay his accounting to his consignor upon any particular "lot" of merchandise until the same is all disposed of and the final balance can be determined, it is equally true that the merchant can account to his consignor within the statutory period after he has sold any of the products. It may be that, if the sale is small, the charges will exceed the total cash received, but that is a mere incident; the accounting nevertheless can be made. In any event, the law is clear, and places the merchant under the obligation of following the procedure therein outlined.

When the accounting is made, if it shows a balance due the consignor, the latter is entitled to receive the same, and a cause of action arises in his favor upon the account. Whether or not the account might later be subject to revision, is unimportant. Under the law, it comprises at that time a completed transaction. In this connection, whether or not the consignor makes a demand for the money is immaterial. He is entitled

to receive the money, and up to that date, at least, the accounting is complete.

The situation is the same even though the merchant failed to make the accounting at the time when, under the law, he should have made it. If he sold goods, and the sale resulted in a balance due the consignor, the law placed upon the merchant the duty of making the accounting, and whether he made the accounting and the consignor failed to receive the money due him, or failed to make any accounting, the breach of duty on the part of the merchant is practically the same. A cause of action has arisen in favor of the consignor, and we conclude that, as between the consignor and a surety on the bond of the merchant, the latter is liable to the former for sums which the consignor, under the law, became entitled to receive between the effective dates of the surety's bond.

In the case of *Swisher v. Fidelity & Casualty Co.*, 113 Neb. 592, 204 N. W. 383, it appeared that a quantity of wheat was consigned to a commission merchant, who stored the grain in his own name in an elevator owned by another. Later, the merchant secured advances from the elevator company on the security of the wheat. The owner of the wheat demanded the same in March, 1922, and later sought to recover against the commission merchant's surety for 1921 the amount of the advances to the merchant which the owner was required to pay, the same having been made during that year. The court held that the commission merchant had committed a breach of duty when he procured advances against his consignor's wheat, and that the breach occurred at the time the advances were secured, which was within the term of the 1921 bond. A judgment against the surety upon this bond was affirmed.

In the case of *Goodwyn v. Union Springs Guano Co.*,

496

228 Ala. 173, 153 So. 246, the supreme court of Alabama held the surety upon a warehouseman's bond responsible to the holder of cotton warehouse receipts which, it may be assumed, showed the delivery of cotton to the warehouseman on dates prior to the execution of the bond sued upon. The court held that the breach of duty with the warehouseman occurred when he failed to deliver on demand cotton represented by the receipts. This breach of duty having occurred after the execution of the bond, the surety was held liable.

It is, of course, true that, in warehouse cases, the dereliction occurs when the property represented by the warehouse receipt is demanded and not forthcoming. This is, we think, analogous to the duty which rests upon the merchant under our law to make to his consignor an accounting when he has sold all or a portion of the products which he has received on consignment. In warehouse cases, a demand for the merchandise is necessary. In the case at bar, the law places upon the merchant the duty to himself perform an affirmative act. No such corresponding duty rests upon a warehouseman. Warehouse cases are not, of course, directly in point on the situation here presented, but the analogy is close, and the cases cited are authorities in support of our conclusion.

The supreme court of Arkansas, in the case of *Bolen v. Farmers Bonded Warehouse,* 172 Ark. 975, 291 S. W. 62, held that the surety upon a warehouseman's bond was not liable to the holder of a warehouse receipt because of cotton lost or misappropriated after the expiration of the term of the bond, regardless of the date the cotton was stored.

The cases of *State ex rel. Reilly v. Farmers' Cooperative Elevator Co.,* 39 N. D. 235, 167 N. W. 223, and *Stutsman v. Cook,* 53 N. D. 162, 204 N. W. 976,

support our conclusion herein, to some extent at least.

To establish liability against a surety on a commission merchant's bond, some breach of duty on the part of the merchant is, of course, requisite. The fact that the goods were consigned during 1932 is not material. We hold that appellant is responsible both for goods sold by its principal after January 1, 1933, and for goods sold prior to that date, as to which the statutory period for accounting and five days additional for payment rendered appellant's principal liable for such payment after January 1, 1933. As to other items, appellant is not responsible.

While the record does not show the proportion of the merchandise consigned by respondent Zagar sold prior to January 1, 1933, it does show that some portion of the products consigned by him were so sold. The judgment is accordingly reversed, and the cause remanded to the superior court, with instructions to determine appellant's responsibility in accordance with the rules herein laid down.

MILLARD, C. J., TOLMAN, MAIN, and GERAGHTY, JJ., concur.