**FIDELITY & DEPOSIT CO. OF MARYLAND v. PORT OF SEATTLE.**

No. 9054.

Circuit Court of Appeals, Ninth Circuit.

Oct. 3, 1939.

Rehearing Denied Nov. 27, 1939.

HANEY, Circuit Judge, dissenting.

Grinstead, Laube & Laughlin and Arthur Grunbaum, all of Seattle, Wash., for appellant.

G. W. Hamilton, Atty. Gen. of Washington, L. C. Brodbeck, Asst. Atty. Gen., and Fairbrook & Williams, Glenn J. Fairbrook, and David J. Williams, all of Seattle, Wash., for appellee.

Before GARRECHT, HANEY, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

An appeal was taken from a judgment of the district court in an action brought by appellee Port of Seattle on a bond issued by appellant surety company. The action was commenced in the Superior Court of the State of Washington, and was removed to the district court on the ground of diversity of citizenship. It was there tried by the court after a jury had been waived. Written findings of fact and conclusions of law were made and judgment was made and entered thereon for appellee-plaintiff in the amount of $50,000 with interest from October 17, 1934.

The trial court found, among other things, that on February 21, 1922, one Matt H. Gormley was the auditor of the Port of Seattle (hereinafter referred to as the Port) a duly organized port district of the State of Washington; that Gormley, as auditor of said Port, had charge of all the books of account of the Port and of the keeping thereof and had charge of the collecting of all funds received by the Port and of depositing them with the Treasurer of King County, State of Washington; that on February 21, 1922, Fidelity and Deposit Company of Maryland (hereinafter referred to as the Company) executed and delivered to plaintiff a certain bond covering, among other employees, said Matt H. Gormley, as auditor of the Port; that the Company from time to time transmitted to the Port certain documents designated as "Annual Premium Lists" and on April 30, 1934, executed and transmitted to the Port a document purporting to increase the amount of suretyship carried under said bond on Matt H. Gormley.

The court also found that from February 21, 1922, to May 8, 1934, the books of account and records of the Port truly and correctly showed all moneys received by the Port and truly showed all moneys properly deposited or disbursed by the Port; that at all times the books of the Port correctly reflected the exact amount of money, funds and other securities which should have been in the possession of the Port; that, as of the close of business on April 30, 1934 the books and records of the Port showed a sum in the amount of $157,336.55 in the possession of Gormley, as auditor, or in banks subject to his check; that on the 8th day of May, 1934, said Gormley was called upon by J. L. Dittemore, one of the examiners for the State Auditor of the State of Washington, to account for said funds, and said Gormley accounted only for the sum of approximately $35,000; that on said date Gormley failed to account for approximately $120,000; "that of said sum lost to the plaintiff most thereof, except for relatively small sums the exact amount of which the court is unable to determine, were taken from the possession of plaintiff prior to April 1, 1934".

The court further found that Matt H. Gormley died on May 8, 1934, leaving no estate and that on October 17, 1934, the

Port and the State of Washington made demand upon the Company for payment to the Port of the sum of $50,000, the full amount of the bond under the increased coverage, and that payment of the same was then, and has ever since been, refused by the Company.

On the basis of the findings summarized above the court concluded that "on the 8th day of May, 1934, Matt H. Gormley failed to account to the plaintiff for a sum in excess of $50,000.00 of funds belonging to the plaintiff" and that "under its bond of February 21, 1922, and the documents executed by the defendant on the 30th day of April, 1934, the defendant owes to plaintiff the sum of $50,000.00 with interest thereon from the 17th day of October, 1934".

The bond executed on February 21, 1922, was in terms as follows:

"That Fidelity and Deposit Company of Maryland, hereinafter called the surety, hereby agrees to indemnify and save harmless the Port of Seattle from any and all loss which it may sustain through the failure of any employee named in the schedule hereto attached, or added thereto by acceptance notices, as therein provided, to faithfully perform such duties as may be required of him from time to time, by the Commissioners of the Port of Seattle, or shall [sic] fail to account for all funds, properties or securities of any kind or description which may come into his possession and belonging to said Port of Seattle, or which it may sustain because of any fraudulent or unlawful deed committed by him, acting alone, or in collusion with others.

"This bond is executed upon the following express conditions:

"First: On application other employees may be added hereto, from time to time by the surety, issuing acceptance in writing, stating the date added, and this insurance on any employee may be increased or decreased by the surety without impairing the continuity thereof, provided that the surety's aggregate liability under all its bonds and engagements, on any one employee, shall not exceed the largest bond or engagement on such employee.

"Second: This bond as to any and all of the employees may be terminated by

"a. The obligee giving notice in writing to the surety specifying the date of termination.

"b. The surety giving 10 days notice in writing to the Secretary of the Commissioners of the Port of Seattle."

Attached to the bond was a schedule listing numerous employees, stating their respective positions, the amount of the bond as to each and the premium thereon. Gormley was listed as "Auditor". The bond amount as to him was given as $20,000 and the premium as $50.

The document executed by the Company on April 30, 1934, recited that the "amount of the Suretyship carried under said bond" on "Matt H. Gormley, Auditor", is increased from "Present Amount $20,000.00" to "$50,000.00", "effective as of April 1, 1934". It was further recited: "And the Surety does hereby agree that continuity of protection under said bond shall not be impaired hereby; provided that the liability of the Surety on Account of the Employee named above, for defaults committed during the periods during which such Employee shall have been covered in the amounts above written * * * shall not be cumulative; and provided further, that in case there shall have been more than one change in the amount carried on any Employee above named, the liability of the Surety on account of defaults committed by such Employee during the periods during which such Employee shall have been covered in different amounts, or committed during the periods during which such Employee shall have been covered in the same amount, or committed partly during the periods during which such Employee shall have been covered in different amounts and partly during the periods during which such Employee shall have been covered in the same amount, shall not be cumulative".

Certain facts as to which the court made no findings are not disputed by the parties. They relate to a former action on the same bond. It appears that on December 29, 1934, the Port commenced an action on the bond in the Superior Court of Washington for King County. March 22, 1935, appellee filed its second amended complaint in that cause to which appellant filed a motion to require appellee to separately state the two causes of action therein contained. That complaint alleged, as does the complaint in the present cause, the issuance of the bond and the

execution of the document of April 30, 1934, the official position and duties of Gormley, and that "on or about the 8th day of May, 1934, plaintiff called upon said Matt H. Gormley to account for" the sum charged to him on the books but that he failed to account for $233,822.52 thereof "whereby there was and now is lost to the plaintiff in excess of the sum of $50,-000.00." The motion to separately state was heard and granted in the Superior Court.

A memorandum decision filed by the judge presiding discloses that the motion was granted upon the theory that liability arose under the "failure to account" provision of the bond coincidentally with the misappropriation by Gormley of the funds, that every added schedule to the original bond constituted in effect a new bond, and consequently that the complaint in question stated two causes of action, one for the misappropriations prior to April 1, 1934 and another for the misappropriations subsequent to that date, which separate causes of action should have been separately stated.

Despite this ruling the Port filed a third amended complaint substantially identical with that ruled upon. This complaint was stricken from the files because it did not conform to the previous order requiring separate statement. On appellee's failure to plead further the action was dismissed. From the judgment of dismissal the Port took an appeal to the Supreme Court of the State of Washington. The Supreme Court made its judgment affirming the judgment of the Superior Court "without prejudice to appellant's [Port's] rights against the respondent [Company] in another action upon its bond". It was further ordered that the "cause be remitted to the Superior Court for further proceedings, in accordance herewith". The Supreme Court rendered an opinion (Port of Seattle v. Fidelity & Deposit Co., 185 Wash. 247, 53 P.2d 740, 743) in connection with its judgment in which the reason for its ruling was stated as follows: "The amended complaint stated in form one cause of action, and no attempt was made to conform to the court's order for separate statements based upon the schedules contained in the policy. In filing its third amended complaint, the appellant waived any error in Judge Ronald's order requiring a separate statement, and that order became the law of the case. The order cannot be reviewed on this appeal." 53 P.2d at page 742. The Supreme Court specifically refused to consider the question as to whether "in and of itself, the amended complaint is a proper pleading".

Subsequent to the decision of the Supreme Court the present action was commenced in the Superior Court of King County on March 24, 1936. We are unable to perceive any substantial difference between the complaint in this action and the second amended complaint filed in the original action. The present case having been removed to the United States District Court on petition of the Company, it there interposed, inter alia, a "Motion to Strike or to Separately State". The motion was based on affidavit of counsel accompanied by certified copies of the orders and rulings made in the original action in the Superior Court. It was averred that: "* * * the question of whether plaintiff is stating two causes of action without separately stating and numbering the same has heretofore been decided by the Superior Court of the State of Washington for King County, and the Supreme Court of the State of Washington. * * * That that cause involves the same parties and the same subject matter and is res adjudicata of the issues here."

On November 5, 1936, the District Court denied the Company's motion to strike or separately state. The court rendered its memorandum decision, wherein it stated: "In the situation here, plaintiff by its complaint has in effect sued upon only one (the larger) of two fidelity insurance schedules which it could have sued upon, and it has for the purposes of this suit apparently abandoned any claims it might have on the other (the smaller) of those two schedules. No reason appears why plaintiff cannot do that, as the two schedules are separate contracts. Plaintiff will, of course, have the burden of proving its right to recover on the amount claimed on the schedule sued upon."

The Company excepted to the order denying its motion to strike or state separately. Thereafter the Company filed its answer and several affirmative defenses. The answer admitted execution and delivery of the bond and schedule, the employment of Gormley as auditor of the

Port and the receipt and disbursement by him of funds and denied the remainder of the essential allegations of the complaint. The second affirmative defense (the only one necessary to be considered on this appeal) alleged that: "* * * any and all losses sustained by plaintiff, for which it seeks recovery in this action, were sustained prior to April 30, 1934, when defendant executed and delivered its schedule herein sued on * * *."

Appellant makes the contention here that the above noticed proceedings in the first action on the bond are res adjudicata of the issues in this case, and in particular that they are res adjudicata that the complaint herein filed (being substantially identical with the complaint in the first action) states two causes of action, and that consequently it was error for the district court to deny the motion to separately state. Appellant also suggests that the district court was bound by the rulings made by the state court in the first court action, and in particular by the memorandum decision hereinbefore referred to because they furnish the "rule of the case".

There is no occasion for us to apply either the doctrine of res adjudicata or that of the "rule of the case". The Washington law is well settled that where a judgment expressly provided that it is without prejudice it is clearly not on the merits and not a bar to a subsequent suit on the same cause of action. It was so held in Petri v. Manny, 99 Wash. 601, 170 P. 127, 128, 1 A.L.R. 1595, where the court declared: "* * * a judgment dismissing an action without prejudice 'determines that the parties are left as free to litigate every issue in the action dismissed as they would have been if it had never been commenced.' [Quoting from Harrison v. Remington Paper Co., 8 Cir., 140 F. 385, 3 L.R.A.,N.S., 954, 5 Ann.Cas. 314.]" See, also, Bates v. Drake, 28 Wash. 447, 68 P. 961, 964; Averill Machinery Co. v. Allbritton, 51 Wash. 30, 97 P. 1082, 1083; 2 Freeman on Judgments, 2d ed., § 754, p. 1588. It is also evident that the proceedings in the state court action do not in any way provide a "rule of the case" to be followed in the present action because that doctrine is confined in its operation to subsequent proceedings in the same case. 2 Freeman on Judgments, 2d ed., § 630, p. 1328; 15 C.J., Courts § 359, p. 961. The present proceeding being altogether distinct and separate from the first action on the bond, the rulings made in the original action are not the law of this case.

The principal dispute on this appeal involves the question as to when, within the terms of the bond, the loss to the Port occurred. The Company urges that the loss occurred when the money was taken and that since, so far as shown by the evidence, none of it was taken after the effective date of the rider increasing the bond as to Gormley to $50,000 it has not become liable in the increased amount. On the other hand, the Port insists that the district court was right in holding that the loss occurred May 8, 1934 when, on demand of Dittemore, Gormley "failed to account" for the funds.

We believe that the holding of the district court was erroneous and that the Company is not liable on the bond except as to the $20,000.00 sum for which it was originally written.

The view taken by the district court can be upheld only if within the meaning of the bond the Port can rely upon the "failure to account" provision of the bond to the exclusion of the "wrongful deed" provision, and then only if, within the meaning of the bond, the "failure to account" liability did not accrue until demand was made on Gormley for the sums earlier misappropriated. The latter statement is true because if the "failure to account" occurred at any other possible time, it occurred before the effective date of the $50,000 schedule. This is so because the Washington courts apply the general rule that bonds of a public officer have no retroactive effect unless such effect is expressly provided.

So in Wenatchee Orchard Syndicate v. Fidelity & Deposit Co., 143 Wash. 632, 255 P. 943, 945, the Supreme Court of Washington held in an action brought on a bond whose terms are not to be distinguished from those of the bond here involved, that no liability accrued thereunder for damages which occurred prior to the execution and approval of the bond, even though the bond recited that the term of office of the public official bonded began at a date prior to that on which the damage occurred. The court stated the general rule to be that unless a bond is in express

terms retroactive it binds the sureties with respect to future transactions only, and that they are not liable for any default in the condition of the bond which had already occurred when the bond took effect. The court conceded the rule to be that the bonds of a compensated surety are to be most strictly construed against the surety, but decided that to construe the bond involved so as to give it a retrospective construction "would be to write a new bond for the parties". Likewise, in the present case, in view of the express provision in the rider increasing the amount of the suretyship under the bond to $50,000 "effective as of April 1, 1934" we would be writing a new bond for the parties were we to give such a rider a retrospective effect, so as to make it cover "failures to account" occurring prior to the designated date. The fact that the bond and the rider both provide that "insurance increases" does not "impair the continuity" of the bond cannot, in view of the express provision as to the effective date of the increased protection, be taken to mean that losses occurring while the bond was effective in the original amount are covered in the increased amount. We think the "continuity" provision has no other effect than to negative any possibility that an increase in coverage or the addition or deletion of employees would operate to terminate liability for defaults occurring prior to the change.

■ The question now becomes: At what time, under the bond provisions did the "failure to account" occur? While we have not found any Washington case on all fours with the instant case on this point, the Washington cases which have come to our attention are strongly indicative that the Supreme Court of that State would, were it presented with the problem before us, hold that the "failure to account" occurred when, and only when, the funds in possession of Gormley were wrongfully taken. In Zagar v. Columbia Casualty Co., 181 Wash. 487, 43 P.2d 949, a commission merchant gave a bond conditioned pursuant to Rem.Rev.Stat. § 8297. That statute provides that a commission merchant shall, within 15 days following the sale and delivery to a purchaser of agricultural products delivered to him on consignment "render a true statement to the consignor showing such sale, the price received therefor," etc., and "within five days thereafter

upon demand by the consignor, pay to the consignor all sums due" to him. In 1932, plaintiff had delivered merchandise to the commission merchant, part of which was sold in 1932 and part in 1933. The suit was brought on the 1933 bond on the theory that the loss occurred in 1933 since the accounting was not called for until that date. The court stated the rule to be that the obligation to pay under an official's bond arises when the principal commits a breach of duty, and held that the 1933 bond was liable only for such merchandise as was sold during that year; that the fact that *demand* was or was not made *was immaterial; that the default occurred when the commission merchant converted the money,* which under the applicable statute occurred when he breached his duty by failing to render an accounting; and that that bond was liable which was in effect at the time of the conversion. The court said, (43 P.2d page 952): " * * * whether or not the consignor makes a demand for the money is immaterial. * * * The situation is the same even though the merchant failed to make the accounting at the time when, under the law, he should have made it. If he sold goods, and the sale resulted in a balance due the consignor, the law placed upon the merchant the duty of making the accounting, and whether he made the accounting and the consignor failed to receive the money due him, or failed to make any accounting, the breach of duty on the part of the merchant is practically the same. *A cause of action has arisen in favor of the consignor,* and we conclude that, as between the consignor and a surety on the bond of the merchant, *the latter is liable to the former for sums which the consignor, under the law, became entitled to receive between the effective dates of the surety's bond."* (Emphasis supplied.)

While the Zagar case is not exactly the same as the case before us, we think it does establish the law of Washington as to two matters (1) that liability under a bond accrues when the earliest wrongful act giving rise to a cause of action occurs and that the accrual of the loss is not postponed by reason of the fact that there are subsequent wrongful acts involving the same funds which, if standing alone, would give rise to a loss, and (2) that no demand is necessary to give rise to a cause of action for funds already wrongfully dealt with.

A closely analogous case is that of Sakris v. Eagle Indemnity Co., 176 Wash. 73, 28 P.2d 316, 317. In that case a real estate broker was bonded under a statutory bond which was conditioned that the broker should "render a faithful accounting of all funds intrusted to him" and pay damages to any person arising by reason of his failure "to render to any person a faithful accounting of all funds so intrusted to him". Four days before the bond in suit was executed plaintiff delivered to the broker a check for $975. The broker, on the day the bond was executed, cashed the check and converted the proceeds to his own use. The surety company contended the money was embezzled when the broker first received the check. The court held, without at all considering the date upon which an accounting was demanded, if in fact such a demand was ever made, that the surety was liable on its bond, stating: "Immediately upon receiving the actual money obtained from the mortgage, Gentsch embezzled it. *If the funds were converted during the term covered by this bond, the surety is liable for it.* [Citing cases]" (Emphasis supplied.)

■ Logic compels us to the conclusion that, if as held in the Zagar case, liability accrues when the earliest wrongful act giving rise to a cause of action occurs, and if, as held in the Sakris case, liability under a bond conditioned upon the rendition of a "faithful accounting" accrues when the funds are converted, then certainly in the present case, where the bond was conditioned both upon performance of unlawful acts and upon failure to account, liability accrued and became fixed when the embezzlements were accomplished.

■ It appears then, that it was error for the district court to give judgment in the amount of $50,000 since, so far as the evidence shows, no losses were sustained after April 1, 1934. However, the evidence does disclose a loss after the execution of the original bond and prior to the effective date of the rider far in excess of the original $20,000 coverage. This evidence, which came in without objection, established the right of the Port to recovery in the sum of $20,000. Moreover, appellant in its brief on this appeal freely concedes that the Port lost more than $20,000 during the period of the $20,000 schedule. The district court should have awarded judgment to the Port in that sum. It may be that such judgment should also include interest.

■ In a case where a jury has been waived, this court has the power, liability for a given sum being conceded and there being no occasion for a new trial, to direct entry of judgment for the correct amount. 28 U.S.C.A. § 877; Thorpe v. National City Bank, 5 Cir., 1921, 274 F. 200, 201; United States v. Utah-Idaho Sugar Co., 10 Cir., 1938, 96 F.2d 756, 760. In the present case there is no occasion for a new trial except as to the amount of interest which should have been awarded. As to this item the Company was precluded from offering evidence from which the allowable interest could be calculated, by reason of the theory upon which the case was tried. Accordingly, the case is remanded to the district court with directions for a new trial, to be limited to the issue of the amount of interest to be included in the judgment, and with further directions once such issue has been tried to enter judgment for the Port in the amount of $20,000 plus the proper amount of interest, if any, so determined.

Reversed and remanded.

HANEY, Circuit Judge (dissenting).

I conceive that the majority opinion fundamentally errs by favoring appellant with an exceedingly narrow construction of provisions written by such company in a bond. I know of no rule of law, and the parties cite none, requiring us to bestow such a benefit on the company.

The company agreed "to indemnify and save harmless * * * [appellee] from any and all loss which it may sustain" in any of the following contingencies: (1) Failure of any employee named therein "to faithfully perform such duties as may be required of him from time to time"; (2) failure of such employee "to account for all funds * * * which may come into his possession belonging to" appellee; or (3) commission by such employee "of any fraudulent or unlawful deed". Each of these three clauses is connected with the conjunction "or" which obviously means that each is an independent undertaking of the company. There is not a word in the bond which permits the company to choose which clause it shall be liable upon, or which restricts the right of appellee to

make such a choice. The effect of the majority opinion, however, is to read such a provision into the bond. I think such construction is unwarranted, since Washington follows the general rule that such a bond is to be interpreted most strongly in favor of appellee. Duke v. National Surety Co., 130 Wash. 276, 227 P. 2.

It is conceded that the liability of the company under provisions (1) and (3) above is restricted to $20,000, but appellee rightly contends that it has the right to choose which of the three provisions it will rely on. The majority denies this by making the selection for appellee, and by selecting the first provision it nullifies appellee's attempt to protect itself. Examination of the cases relied on by the majority, in my opinion, discloses their inapplicability.

It seems clear to me that the provisions in the bond are obviously independent of each other, but assuming for the purposes of argument that it is doubtful whether they are dependant or independent, then Duke v. National Surety Co., supra, requires the holding that each provision is a separate undertaking and appellee has the option to make a choice between them.

Provision (2), the one relied on by appellee, makes the company liable for the failure of any employee named in the bond "to account for all funds * * * which may come into his possession belonging to" appellee. The amount of liability is dependent upon the time of the failure "to account" in accordance with Zagar v. Columbia Casualty Co., 181 Wash. 487, 43 P.2d 949, 951: "It is a well-recognized principle of law that a principal, having several successive bonds covering different periods, upon committing a default renders liable that bond in force when the default is committed. * * * The obligation to pay arises when the principal commits a breach of duty. In cases of defaults by an official, the bond covering the period during which the default occurred is liable. * * *" The duty was "to account". The words "account for" may mean not only a statement or rendition of the account, but also delivery of the money. See: The Idaho, 93 U.S. 575, 579, 23 L.Ed. 978; Hale County, Tex. v. American Indemnity Co., 5 Cir., 63 F.2d 275, 278; United States v. Rehwald, D.C.Cal., 44 F.2d 663; 1 C.J.S., Account, page 576. In the view of the rule announced in Duke v. National Surety Co., supra, the default occurred, therefore, at the time when Gormley was required to deliver the money in his custody.

Appellee was permitted an "incidental expense fund in such amount as the port commission may direct". Laws of Wash., 1933, Ch. 189, p. 846, § 16. This fund was in Gormley's custody. I find nothing in the Washington statutes specifying when he should account therefor, and the reasonable rule would be that Gormley was required to account on demand. When the demand was made, Gormley failed to account, and at that time appellant was subject to a liability of $50,000. For these reasons, I think the judgment should be affirmed.