HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, a corporation,
Appellant,

v.

W. O. BALDWIN, Trustee; Osborne Live-
stock Commission Company, a partner-
ship; Salina Sales Pavilion, a partner-
ship; Beverly Sales Company, a part-
nership; Cloud County Livestock Com-
mission Company, a partnership; Floyd
E. Boyer; Anker Petersen; Lyle Peter-
sen; and Lauritz M. Andersen, Appel-
lees.

No. 16024.

United States Court of Appeals
Eighth Circuit.

Dec. 30, 1958.

L. J. Tierney, Omaha, Neb. (Cassem,
Tierney, Adams, Kennedy & Henatsch,
Omaha, Neb., were with him on the
brief), for appellant.

George Healey, Lincoln, Neb. (Richard
D. Wilson, Robert A. Barlow, Patrick W.
Healey, and Healey, Davies, Wilson &
Barlow, Lincoln, Neb., were with him on
the brief), for appellee, W. O. Baldwin,
Trustee.

John Q. Royce, Salina, Kan. (H. H.
Dunham, Jr., Salina, Kan., Guy C. Cham-
bers, William C. Hastings, Lincoln, Neb.,
and Hampton, Dunham, Royce & Engle-
man, Salina, Kan., and Chambers, Hol-
land, Dudgeon & Hastings, Lincoln,
Neb., were with him on the brief), for
appellees, Osborne Livestock Commis-
sion Co., and others.

C. C. Sheldon, Lincoln, Neb. (Warren
K. Dalton and Marti, O'Gara, Dalton &
Sheldon, Lincoln, Neb., were with him on
the brief), for appellee, Floyd E. Boyer.

Before GARDNER, Chief Judge, and
WOODROUGH and VAN OOSTER-
HOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

The controversies in this case follow upon the failure and bankruptcy of Vernon F. Kuhlmann, or Kuhlman, formerly of Deshler, Thayer County, Nebraska, who carried on a business of buying and selling livestock at that town and others within the neighboring territory for many years, but failed to pay for a number of cattle he bought for which he gave unpaid checks to various persons during the year beginning August 31, 1951.

Prior to that date he had become the sole owner and operator of a livestock sale market at Deshler, known as Deshler Sales Barn, which, after some delay, had then become a certified public stockyards under the federal Packers and Stockyards Act (7 U.S.C.A. § 201 et seq.). Upon such certification being made, Mr. Kuhlmann took all the necessary steps required by the Act and regulations to become a registered dealer qualified as such to buy and sell cattle at the Deshler Sales Barn and at the several federally certified public stockyards owned and operated by the appellees at the following Nebraska and Kansas towns, namely: Osborne Livestock Commission Company at Osborne, Kansas; Salina Sales Pavilion at Salina, Kansas; Beverly Sales Company at Salina, Kansas and Cloud County Livestock Commission Company at Concordia, Kansas. In registering as a dealer at these stockyards, Mr. Kuhlmann was required to indicate the name under which he would do business at each of the yards as a dealer, and he gave the designation "Vernon Kuhlmann d/b/a Deshler Sales Company of Deshler, Nebraska" in each of his registrations. He made no representation that the name stood for anyone other than himself and also made it clear that he would carry on the business of buying and selling cattle as a dealer at the yards, for which he was so registering, as his individual solely owned business. In order to complete his qualifications to buy and sell as a dealer at the federally regulated public yards, he was required to give a bond to secure payment for the cattle he bought there

and he executed the bond here in suit to comply with that requirement.

The bond is entitled "General Live Stock Bond" and was executed by Mr. Kuhlmann and Hartford Accident and Indemnity Company on said date of August 31, 1951, in the penal sum of $52,000.00. It ran for one year from its date and one of its relevant conditions was:

"Applicable if Principal is Dealer * * *" to "* * * pay when due to the person or persons entitled thereto the purchase price for all livestock purchased by said Principal [Vernon F. Kuhlmann, d/b/a Deshler Sales Company of Deshler, Nebraska] at public stockyards as defined in the Act of Congress known as the Packers and Stockyards Act, 1921, as amended."

Mr. W. O. Baldwin, plaintiff in this action, is the obligee named in the bond as "Trustee for all persons who may be damaged through the breach of the bond" and he is authorized by its terms to "* * * maintain an action in his own name, the recovery to be made for the use of the person damaged".

He brought this action upon the bond against the Hartford Company for the unpaid claims for cattle purchased by Mr. Kuhlmann at the named public stockyards during the period covered by the bond. The several unpaid claimants for the purchase price of the cattle purchased were also included as defendants. A true copy of the bond was attached to the complaint and it was alleged that the principal named in the bond did not perform the conditions contained in it, resulting in a breach of the bond which damaged the defendants other than the Hartford Company in an amount in excess of $52,000.00. Judgment was prayed in that amount, together with attorney fees, interest and costs. There was federal jurisdiction because the bond sued on was executed under the laws of the United States.

The defendant indemnity company admitted the execution of the bond sued on, that the bond had been breached to the

extent that the company was liable thereon and obligated to pay certain cattle owners from whom Mr. Kuhlmann had purchased cattle at the Deshler stockyards during the period and for which he had failed to pay, amounting to $2,-821.08. It tendered payments in that amount, but it denied liability to the other named parties from whom he had admittedly bought cattle during the period, at prices not in dispute, and whom he had likewise failed to pay.

The indemnity company divides these other claimants, for whose claims it denies liability, into three classes:

First: There are the four federally regulated Kansas public livestock yards at which Mr. Kuhlmann bought certain cattle at public auction during the period and gave his bad checks for the purchase price. The markets are referred to by the names of their owners. These owners recognized Mr. Kuhlmann as the registered and qualified dealer at their yards and accepted the checks he gave for the cattle and paid the amounts of the checks less commissions, etc., to the owners of the cattle. They sought recoupment by recovery on the bond for the amounts of the checks.

Second: The three farmers; Anker Petersen; Lyle Petersen; and Lauritz M. Andersen, who claim that Mr. Kuhlmann purchased certain livestock from them within the period at the public stockyards known as the Deshler Sales Barn—Vernon Kuhlmann Sole Owner—at Deshler, Nebraska, and gave bad checks for the purchase price. They sought recovery on the bond for their damages.

Third: Defendant-Claimant Floyd E. Boyer claimed that Kuhlmann bought 91 head of cattle from him at the Deshler public stockyards within the period of the bond, gave a bad check, and never paid the purchase price.

As to the first group of claimants, the defense of the indemnity company was, and is, that whereas the principal named in the general livestock bond sued on was Vernon F. Kuhlmann, d/b/a Deshler Sales Company of Deshler, Nebraska, the transactions out of which the claims

arose were in each instance purchases of livestock and failure to pay therefor by Vernon Kuhlmann personally and not by Vernon F. Kuhlmann, d/b/a Deshler Sales Company of Deshler, Nebraska, so that the bond did not cover the transactions. The same defense was asserted as to the claims of each of the three farmers, and the further contention was made as to them that their cattle were not "purchased at a public stockyards as defined by the Act", within the condition of the bond, but were purchased at the farmers' respective farms. As to the purchase of the ninety-one head of cattle from Mr. Boyer, it was and is contended that the purchase was by Vern Kuhlmann personally and was made at Mr. Boyer's farm—not at public stockyards.

The case was tried to the court without a jury and the court found as a fact (168 F.Supp. 86, 107) "Upon the whole record, * * * that in making each of the several purchases [of cattle], and in the making, execution, issuance and delivery of the several [protested and unpaid] checks [for the cattle purchased] * * * Vernon F. Kuhlmann acted as 'Vernon F. Kuhlmann, doing business as Deshler Sales Company', that is to say, in the capacity in which he and defendant, Hartford Accident and Indemnity Company executed, filed and gave the bond in suit."

The court also found as to the purchases of cattle from the three farmers that each sale was made at a "posted stockyard" for which "Vernon F. Kuhlmann, doing business as Deshler Sales Company was registered as a dealer under the Packers and Stockyards Act, 1921," and that "those sales also were made to Vernon F. Kuhlmann, doing business as Deshler Sales Company" and that "each of the disputed sales was within the protection and coverage of the bond sued upon." The same findings were made in a supplemental opinion as to the purchase of 91 head of cattle from Floyd E. Boyer.

The findings, in plaintiff's favor, required judgment against the defendant indemnity company in the full amount of

$52,000.00 named in the bond sued on, the aggregate damages from the breach of the bond being largely in excess of that amount. Judgment for plaintiff in that amount was accordingly awarded and an allowance for attorneys fee for the services of Mr. Baldwin in the sum of $7,925.00 was added as a part of the cost also included in the judgment. A further addition was made to the judgment for interest, from June 11, 1952, at six per cent, and costs.

After motion for new trial, filed by the indemnity company, had been heard and denied, it took the present appeal to obtain reversal of the judgment. It presents that the court "clearly erred" in making seven specified findings of fact and that it "erred in its opinion and judgment in finding and holding" in respect to eight other specified matters and that it "clearly erred" in allowing interest and attorneys fee in the judgment.

■ The last contention concerning interest and attorneys fee has not been urged in argument at the bar or in the brief and we may consider it abandoned. Mogis v. Lyman-Richey Sand & Gravel Corp., 8 Cir., 189 F.2d 130, 133, citing General Finance Loan Company v. General Loan Company, 8 Cir., 163 F.2d 709, 711. It is in any event without merit. Section 44–359, R.R.S.Neb.1943 (Reissue 1952); Swisher v. Fidelity & Casualty Co., 113 Neb. 592, 204 N.W. 383; State ex rel. School District of Scottsbluff v. Ellis, 160 Neb. 400, 70 N.W.2d 320; People of Sioux County, Nebraska v. National Surety Co., 276 U.S. 238, 242, 48 S.Ct. 239, 72 L.Ed. 547.

Appellant states in its brief that: "The case before the court involves a very simple question of fact,—'Was Vern Kuhlmann dealing with the various claimants as 'Vernon F. Kuhlmann d/b/a Deshler Sales Company' (the principal under the bond involved) or was he conducting his separate business wherein he personally and privately speculated in the buying and selling of livestock?' If he was, in these transactions, acting as Vernon F. Kuhlmann d/b/a Deshler Sales Company then the bond would cover such transactions." [Coverage meaning so far as the issue concerning identity of the principal on the bond is concerned.]

Following its summary of the issues in the case, appellant recalls and discusses, from its own point of view, the evidence related to the findings as to which it claims the court clearly erred and, also, the matters as to which it asserts the court "erred in its opinion and judgment in finding and holding" and insists that the court should have decided the issue, as it was stated, in its favor.

■ But it appears that the court studied and considered all particulars of the evidence with painstaking care in two trials of the above summarized issue. All appellees except Boyer participated in the first trial and he was included with the others in the second. The court familiarized itself thoroughly with all details of the evidence and has set out the substance of it in full in the two opinions accompanying its judgment. We see no occasion to repeat it here. Our study of the record convinces that the court's findings and judgment on the issue above stated are supported by substantial evidence and are not clearly erroneous nor based on a mistaken view of the law.

The arguments for the bonding company proceed on the theory that it was incumbent on the claimants in this action to show that Mr. Kuhlmann made some declaration or overt manifestation in the course of each of the purchases he made at the stockyards, where he was registered and acting as a dealer, to the effect that he was acting or doing business as Deshler Sales Company of Deshler, Nebraska, in order to bring his purchase within the protection of the bond. In other words, if he said in the course of a trade that he was Deshler Sales Company doing the buying it came under the bond, but if the only names used in the dealing in the yards were like "Vern" or "Tom, Dick and Harry" then there would be evidenced a personal business of speculating or gambling on the part of Mr. Kuhlmann which the bond did not secure. The evidence was

also stressed and a point was made that Mr. Kuhlmann owned and operated a livestock sales barn at Davenport, Nebraska, during the period here involved.

But that yard was not a public stockyard under the federal Act and it was not shown that business done at the Davenport yard had anything to do with the dealer transaction involved in this action.

The bookkeeping of Mr. Kuhlmann was also relied on to support the defense, but his entire set of books was not produced and the more or less scattered entries that were offered, and carefully analyzed and considered by the court, do not tend to show that Mr. Kuhlmann did not make his purchases in issue d/b/a Deshler Sales Company.

On the other hand the evidence showed that Mr. Kuhlmann consistently followed a uniform manner of doing business as a dealer in purchasing cattle at the federally regulated stockyards. He declared in each application for registration as a dealer at such yard that he would do business as Deshler Sales Company. He maintained that name upon his own barn at Deshler and conducted a dealer business at each of the yards in only one manner and in one interest which was entirely consistent with his declaration. If there had been evidence that Kuhlmann made some of the purchases here involved in one way or in a certain interest and others in a different way or in a different interest such facts might have supported the indemnity company's position. But there was no such proof.

The owners of the yards, other than his own, were the ones to whom he made his payments for his purchases as a dealer at their yards. They recognized and treated him as a dealer d/b/a Deshler Sales Company under bond as such and because he was registered and had given his bond in that way and through a long and uniform course of doing business had never given any reason to doubt that was his status. It would have been criminal under federal law if he had undertaken to carry on at the yards as a dealer in violation of his registration.

There was no reason to infer and the court properly refused to infer that he had done so.

As to his purchases at his own posted stockyards at Deshler, the sign above the door, the posting, his registration, and the bonding fairly disclosed that he was the sole owner of the business there and that the business was being done as Deshler Sales Company business. Nothing in the evidence shows that it was done in any other interest.

We find no justification to disturb the fact finding of the District Court that all the purchases of cattle were made by Mr. Kuhlmann at the posted stockyards in the capacity in which he was registered and bonded under the Packers and Stock Yard Act.

As to the places where the purchases from the farmers and Mr. Boyer were made. With respect to claimants Anker and Lyle Petersen there was testimony that Kuhlmann made an offer on their cattle at their farm which was unsatisfactory. There was one steer missing which prevented consummation of a sale at the farm. The steer was found and produced with the rest at the Deshler Sales Barn and all were there weighed and the purchase price was there computed and agreed to. The check for the purchase price was delivered there.

With respect to claimant Lauritz M. Andersen, there was testimony that offers were made at his farm for his cattle by Mr. Kuhlmann, but the offers were not finally accepted there. After the cattle were brought to the Deshler Sales Company barn discussion as to the price was continued and then when the cattle were being weighed there, Mr. Kuhlmann, for the first time, brought it up that he intended to deduct 2% on the weight for shrinkage. Objection was made to that charge and thereafter the terms were agreed upon and the purchase was completed at the barn.

With respect to claimant Floyd Boyer, there was evidence that Mr. Kuhlmann first considered Boyer's cattle to be too heavy and made no offer to purchase them until they were being weighed at the Deshler Sales Barn. It

was fairly inferable that the offer to purchase and the acceptance thereof were first made at the barn.

The Nebraska Statute, Section 69–418, R.R.S.1943 (Reissue 1950), provides:

"69–418. Contract to sell; specific goods; when property passes. (1) Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

"(2) For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of the contract, the conduct of the parties, usages of trade and the circumstances of the case."

We think the court properly applied the Nebraska law, and the finding that each of the purchases of cattle was made at a place covered by the bond was not clearly erroneous or induced by mistake of law.

We conclude that the proceedings and judgment appealed from are without reversible error and the judgment is accordingly, in all respects, affirmed.