THE DEPARTMENT OF AGRICULTURE, Plaintiff-Appellee, *v.* E. WAYNE ACKERMAN *et al.,* Defendants-Appellees.—(KENNETH E. ACKERMAN *et al.,* Defendants-Appellants.)

(No. 75-33; )

Fifth District—October 20, 1975.

*Rehearing denied January 2, 1976.*

Conger & Elliott, of Carmi, for appellants.

Fechtig & Sutton, of Carmi, and Alton A. Greer, of Junction, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a final order and judgment and from an order denying a post-trial motion by the Circuit Court of Gallatin County. In an interpleader action brought by the Department of Agriculture the court below held that all producers who had not received payment for grain sold to a grain dealer were entitled to share in the proceeds of a statutory bond.

The bond in question was executed on October 1, 1971, pursuant to Ill. Rev. Stat. 1971, ch. 5, par. 303, and was to remain in effect for a period of one year. The bond was conditioned on compliance of the grain dealer, Thomas Bates Elevator (hereinafter Bates), with the provisions of "An Act to license and regulate grain dealers engaged in the business

of purchasing grain from the producers thereof * * *" (Ill. Rev. Stat. 1971, ch. 5, par. 301 *et seq.*) (hereinafter Grain Dealers Act). Bates ceased doing business on April 26, 1972, on which date he was indebted to producers in the amount of $132,725.18. The face amount of the bond, $65,000, was collected by the Department of Agriculture and held for all producers who had sold grain to Bates without being paid therefor. The producers were divided by the trial court into two groups: (1) those that delivered grain to Bates prior to the effective date of the bond, and (2) those that delivered grain to Bates within the period covered by the bond. All were held to be entitled to share in the proceeds of the bond. The issue presented for review is whether the trial court erred in holding that the bond covered producers who delivered grain to Bates prior to October 1, 1971, the effective date of the bond.

A bond does not cover defaults of the principal occurring prior to the effective date of the bond, unless the bond expressly provides otherwise (*Bartlett v. Wheeler*, 195 Ill. 445), for it cannot be assumed that the surety intended to be bound by the past delinquencies of the principal. To determine what the bond in this case was intended to cover, it must be read in conjunction with the statute to which it refers. Section 3 of the Grain Dealers Act (Ill. Rev. Stat. 1971, ch. 5, par. 303) provided that the grain dealer's bond was "conditioned upon the payment by the applicant [dealer] to producers for grain purchased by the applicant from producers," and further, that the bond was for the benefit of "any producer from whom the applicant may purchase grain and who is not paid by the applicant therefor." Thus, the bond was intended to cover any breach of the grain dealer's duty to pay for grain purchased from producers.

The phrase, "any producer from whom the applicant *may* purchase grain," suggests that the bond only covers defaults on purchases made during its term. That interpretation presents no problem if the duty to pay always arises upon delivery of the grain. But if payment is deferred by agreement of the parties, the anomalous situation could arise where delivery occurs during the term of one bond and default occurs during the term of a later bond. The first surety could not be held liable because no default occurred under its bond, and the second surety would escape liability because the purchase was not made under its bond. Moreover, in 1972 the General Assembly added section 6.1 (Ill. Rev. Stat. 1973, ch. 5, par. 306.1) to the Grain Dealers Act, which provides specific requirements for recovery under a bond. All that is required under that section is that a producer request payment from the dealer within 120 days after delivery, and notify the Department of Agriculture of the dealer's default within 130 days after delivery. Although the word "may" was retained in section 3 (par. 303), section 6.1 (par. 306.1) contains

no requirement that delivery be within the period covered by the bond.

The key to coverage of the grain dealer's bond is a breach of the duty to pay occurring within the term of the bond. *Bartlett v. Wheeler* held that a bond guaranteeing performance of a grain purchase contract did not cover a default that occurred during the period covered by the bond because the grain involved was not purchased under the contract. *Bartlett* is distinguishable from the case at bar because the bond there covered only performance of the contract, which required accounting only for grain purchased under its terms. *Zagar v. Columbia Casualty Co.* (1935), 181 Wash. 487, 43 P.2d 949, is more apposite. In *Zagar* a statutory merchant's bond "for the benefit of all consignors having a cause of action against the commission merchant" was held to cover goods delivered to the merchant prior to the execution of the bond in question. While the court recognized that delivery was the basis of the obligation, it held that the date of delivery was irrelevant and that the surety was liable for any breach of the merchant's duty to pay which occurred within the period covered by the bond.

Appellants here argue that the grain dealer's obligation to pay arose upon delivery of the grain by the producer. If that is correct, producers who sold grain to Bates prior to the effective date of the bond, appellees, are not entitled to share in its proceeds. But the circuit court made no determination as to when the duty to pay arose. Section 2—310 of the Uniform Commercial Code (Ill. Rev. Stat. 1973, ch. 26, par. 2—310) cited by appellants in support of their argument that payment is due upon delivery, applies only if no other agreement is reached. The record contains insufficient facts for us to determine at what time Bates' obligation to pay arose with respect to deliveries made prior to the bond. There are many references to "priced later" agreements and sales on "future settlement." Where payments are shown in various exhibits, they often occur after the date of delivery.

■■ We must remand this case to the Circuit Court for a determination of the date on which Bates' duty to pay was violated with respect to each producer who delivered grain prior to the period covered by the bond. Any default which occurred within such period is covered by the bond and the producer should be entitled to share in the proceeds.

■■ We reject the contention that all appellees are covered by the bond simply because they delivered grain to Bates and were not paid therefor; the obligation continuing throughout the period of the bond. The breach of a duty to pay is an instantaneous occurrence that coincides with the moment at which the duty arises, and cannot be viewed as continuing. Once a duty arises under a contract, and until performance, a *cause of*

*action* continues, but to say that a *duty* continues until performed would render nugatory the applicable statute of limitations.

The order of the Circuit Court of Gallatin County is reversed and the case remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

JONES, P. J., and G. J. MORAN, J., concur.